RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ALLIED ERECTING AND DISMANTLING CO., INC.;
ALLIED INDUSTRIAL DEVELOPMENT CORPORATION,

*Petitioners*,

*v.*

SURFACE TRANSPORTATION BOARD; UNITED STATES
OF AMERICA,

*Respondents*,

OHIO & PENNSYLVANIA RAILROAD COMPANY, et al.,

*Intervenors*.

Nos. 14-3094/15-4020/4021

On Petition for Review of Orders from
the Surface Transportation Board
No. FD 35316.

Argued: June 8, 2016

Decided and Filed: August 22, 2016[*]

Before: KETHLEDGE, WHITE, and DAVIS[**], Circuit Judges.

_____

## COUNSEL

**ARGUED:** Richard H. Streeter, LAW OFFICE OF RICHARD H. STREETER, Washington,
D.C., for Petitioners. Eric M. Hocky, CLARK HILL PLC, Philadelphia, Pennsylvania, for
Intervenors. Erik G. Light, SURFACE TRANSPORTATION BOARD, Washington, D.C., for
Respondents. **ON BRIEF:** Richard H. Streeter, LAW OFFICE OF RICHARD H. STREETER,
Washington, D.C., for Petitioners. Eric M. Hocky, CLARK HILL PLC, Philadelphia,

---

[*]This decision originally issued as an unpublished opinion filed on August 22, 2016. The court has now
designated the opinion as one recommended for full-text publication.

[**]The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the
Fourth Circuit, sitting by designation.

1

Pennsylvania, Thomas J. Lipka, MANCHESTER NEWMAN & BENNETT, L.P.A., Youngstown, Ohio, for Intervenors. Erik G. Light, SURFACE TRANSPORTATION BOARD, Washington, D.C., Robert B. Nicholson, Adam D. Chandler, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

————————————

## OPINION

————————————

KETHLEDGE, Circuit Judge.   Allied Erecting & Dismantling Co. wants to evict a railroad company from two sets of railroad tracks on land that Allied claims to own in Youngstown, Ohio.   The question before us is whether the Surface Transportation Board has jurisdiction over those tracks.   The Board concluded that the tracks at issue here are used by a common carrier and are thus within the Board's jurisdiction, pursuant to the Interstate Commerce Act.   Allied petitions for review, arguing that the tracks are private tracks and thus outside the Board's jurisdiction.   We agree with the Board and deny the petition.

I.

A.

Under the Interstate Commerce Act, as amended by the Interstate Commerce Commission Termination Act, the Surface Transportation Board has exclusive jurisdiction over "transportation by rail carrier[.]"   49 U.S.C. § 10501(a).   The Act preempts any remedies provided by state and local law.   49 U.S.C. § 10501(b).   A "rail carrier" is "a person providing common carrier railroad transportation for compensation."   49 U.S.C. § 10102(5).   "Railroad" and "transportation" are broadly defined to include virtually any property, track, or vehicle "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use[.]"   49 U.S.C. § 10102(6), (9).

The Act contemplates at least three types of railroad track.   The first type, "railroad lines" or "main line tracks," comprises tracks "designed and used for continuous transportation service by through, full trains between different points of shipment or travel[.]"   *Nicholson v. ICC*, 711 F.2d 364, 367 (D.C. Cir. 1983) (emphasis omitted).   Railroad lines fall within the Board's

general jurisdiction over railroad transportation, pursuant to section 10501. No one may build an extension to a railroad line, build additional lines, provide transportation over an extended or additional line, or abandon a line without Board authorization. 49 U.S.C. §§ 10901(a), 10903.

The second type is "excepted tracks," defined as "spur, industrial, team, switching, or side tracks, or facilities[.]" 49 U.S.C. §§ 10501(b), 10906. Excepted tracks are used for loading cars, track switching, and other activities that are ancillary to main-line service. *Nicholson*, 711 F.2d at 367-68. Although the Board has jurisdiction over excepted tracks, *see* 49 U.S.C. § 10501, the Board's powers as to those tracks are limited. *See* 49 U.S.C. § 10906. Read together, sections 10501 and 10906 mean that "the construction and disposition" of excepted track are left in the hands of railroad management. *See Port City Prop. v. Union Pacific R. Co.*, 518 F.3d 1186, 1188 (10th Cir. 2008).

The third type, "private tracks," includes tracks that are not used for "transportation by rail carrier"—i.e. not used by a person who provides common-carrier service for compensation— and are therefore outside the Board's jurisdiction. *See* 49 U.S.C. § 10501(a). According to the Board, tracks are private if they are built, maintained, and operated by the shipper to serve only the shipper, "so that there is no holding out to serve other shippers for compensation." *B. Willis, C.P.A., Inc.—Pet. for Declaratory Order*, S.T.B. Fin. Docket 34013, 2001 WL 1168090, at *2 (Oct. 1, 2001) (internal quotation marks omitted); *see also Kieronski v. Wyandotte Terminal R.R. Co.*, 806 F.2d 107, 109 (6th Cir. 1986); *Pinelawn Cemetery—Pet. for Declaratory Order*, S.T.B. Fin. Docket 35468, 2015 WL 1813674, at *5 (Apr. 20, 2015).

B.

1.

This case concerns railroad tracks on two parcels of land, one on each side of the Center Street Bridge in Youngstown, Ohio. On the east side of the bridge, Allied owns the land and tracks, which the parties refer to as the "LTV tracks." The Mahoning Valley Railroad Company has had an easement to use the LTV tracks since the 1990s. In 2005, Mahoning began parking rail cars on the tracks, which Allied considered a violation of the easement. Allied sued in state court to evict Mahoning; the state court referred the matter to the Board.

Allied challenged the Board's jurisdiction, arguing that the LTV tracks were "spur, side, or industrial tracks," which echoes the description of excepted tracks in 49 U.S.C. § 10906. Allied believed, erroneously, that the Board did not have jurisdiction over excepted track. The Board concluded (erroneously, it turns out) that it had previously authorized Mahoning to provide common-carrier service using the LTV tracks. The Board therefore concluded that Mahoning was a "railroad carrier"; and thus that the Board had jurisdiction over Mahoning's use of the LTV tracks. The Board then concluded that the easement did not forbid Mahoning's parking practices.

Allied petitioned to reopen *Allied I*, arguing that the Board in fact never authorized Mahoning to use the LTV tracks (though the Board admittedly had authorized Mahoning to use other tracks around Youngstown). In support, Allied introduced an affidavit from a former Mahoning employee, William Spiker, who asserted that the LTV tracks had been built as part of a strictly in-plant system for a steel mill and thus were never subject to the Board's control. Allied later petitioned to clarify its argument, arguing for the first time that the LTV tracks were private tracks outside the Board's jurisdiction, rather than excepted tracks, which fall within the Board's purview.

The Board agreed with Allied that the Board had not, in fact, authorized Mahoning to use the LTV tracks. But the Board then concluded that the LTV tracks were mainline tracks, which again meant that the Board had jurisdiction over Mahoning's use of them. The Board refused to consider the Spiker affidavit or Allied's petition to clarify its argument because both came too late. Specifically, the Spiker affidavit was available before the Board decided *Allied I* and thus was not new evidence. And Allied waited five years to clarify its principal argument to the Board. The Board reaffirmed that Mahoning's parking practices did not violate the easement.

2.

The parties agree that, at one time, Mahoning owned a lot on the west side of the Center Street Bridge, known as lot 62188. Mahoning alleges that it still owns the lot; Allied says that Mahoning sold the lot to a real estate company, which then sold the lot to Allied. Allied brought

suit in state court to evict Mahoning from the lot, and the court again referred the dispute to the Board.

Before the Board, Allied at first expressly argued that the tracks on lot 62188 were excepted track within the scope of section 10906.  In a later motion for an expedited ruling, however, Allied instead argued that the tracks were private.  The Board found that Mahoning was then using the tracks on lot 62188 to provide common-carrier service, and thus the tracks could not be private tracks.  As such, the Board reasoned, the tracks must be either excepted or mainline tracks, and thus are within the Board's jurisdiction.  The Board sent the parties back to state court to determine whether Mahoning had ever sold the lot.

Allied petitioned this court for review of all three of the Board's decisions.

## II.

We will uphold the Board's decisions so long as they were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, . . . or unsupported by substantial evidence."  *City of Riverview v. Surface Transp. Bd.*, 398 F.3d 434, 439-40 (6th Cir. 2005).

### A.

Allied argues that the LTV tracks are outside the Board's jurisdiction because they are private tracks that were built solely to move goods around a steel mill.  In-plant tracks are not common-carrier tracks.  *Kieronski*, 806 F.2d at 109.  Although Allied concedes that the LTV tracks are not currently used as in-plant tracks, Allied contends that the tracks were private when they were built, that the Board never authorized Mahoning to provide common-carrier service on the tracks, and that Mahoning's unauthorized use of the tracks cannot convert them into mainline or excepted tracks.

But there are two problems with that argument.  The first is that Allied waited too long to make it.  Allied did not argue that the tracks are private until five years after this litigation began, and more than a year after the Board decided *Allied I*.  At that point, the Board refused to hear

the argument. That refusal was not arbitrary or capricious, and thus neither was the Board's decision on this point.

The second problem is that Allied concedes that Mahoning now provides common-carrier service using the LTV tracks. Mahoning's use of the tracks fits the statutory definition of "transportation by rail carrier . . . by railroad" and is thus within the Board's jurisdiction. *See* 49 U.S.C. §§ 10501; 10102(5), (6), (9). Nothing in the statute limits the Board's jurisdiction to Board-authorized transportation or rail carriers. Were it otherwise, rail carriers could avoid the Board's jurisdiction merely by operating without Board authorization.

Allied also argues that the Board should have reconsidered *Allied I* in light of the Spiker affidavit, and that, if the Board had done so, it would have concluded that the LTV tracks were private tracks. But here again Allied could have presented the Spiker affidavit to the Board before it decided *Allied I*. Thus the affidavit is not new evidence, and the Board properly refused to reconsider *Allied I* on that ground. *See* 49 U.S.C. § 1322.

B.

Allied also argues that the tracks on lot 62188—on the west side of the bridge—became private tracks when Mahoning sold the lot to a real estate company. Thus, Allied says, the Board lacks jurisdiction over the tracks. This argument fails for the same reason: according to the Board, Allied conceded that the track is not private, and therefore is within the Board's jurisdiction. In any event, Allied begs the question whether Mahoning sold the lot in the first place. That is the question the Board referred to state court. And the state court's answer to that question will in turn be a necessary step in resolving the parties' dispute regarding lot 62188: if Mahoning still owns the lot, then Allied has no right to evict Mahoning, though Mahoning would still need Board approval to operate on any mainline track; if Allied owns the lot, then the parties must return to the Board to determine whether the tracks are mainline or ancillary before proceeding any further. But until the state court determines who owns lot 62188, there is nothing left for the Board or this court to decide.

\* \* \*

We deny the petitions for review.