2020 IL App (1st) 190836-U

THIRD DIVISION
June 30, 2020

No. 1-19-0836

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| COULAS VIKING PARTNERS, an Illinois General Partnership, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 13 CH 28409 |
| THE BELT RAILWAY COMPANY OF CHICAGO, an Illinois Corporation, and INGREDION INC., a Delaware Corporation, | ) ) ) ) | Honorable Celia G. Gamrath, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice McBride concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; plaintiff's claims against defendant railroad and shipper are preempted by the federal Interstate Commerce Commission Termination Act which grants exclusive jurisdiction over regulation of transportation by railroad to the Surface Transportation Board; because all of plaintiff's claims have the effect of regulating transportation by rail the circuit court of Cook County lacks subject matter jurisdiction over the claims and defendants were entitled to summary judgment as a matter of law.

¶ 2    Plaintiff's complaint sought declaratory and injunctive relief (1) to declare that

defendants do not possess any rights to use certain property for transportation by rail as defined

by federal statute and (2) enjoining defendants' allegedly wrongful use and trespass of the

property. The complaint also sought damages plaintiff allegedly suffered as a result of defendants' conduct. The complaint alleged defendants used the property by their possession and operation of a certain railroad track "on virtually a daily basis" without plaintiff's permission or authorization. The complaint alleged defendants "do not have any right, title or interest" in the property nor consent to use the subject property. Defendants moved for summary judgment on the ground plaintiff's complaint is preempted by federal statute. The circuit court of Cook County granted defendants' motion for summary judgment.

¶ 3    For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5    In November 2016 plaintiff, Coulas Viking Partners (Viking), filed its third amended complaint (complaint) against defendants, the Belt Railway Company of Chicago (Belt) and Ingredion Incorporated (Ingredion) alleging defendants have used Viking's property without permission or authorization for years, that this use constitutes a trespass, and that defendants' use of the property has prevented Viking from enjoying the full benefits of ownership of its property, including using it, developing it, or selling it. The following is taken from the complaint.

¶ 6    Belt is an "intermediate switching terminal" railroad and Ingredion is a food, beverage brewing, and pharmaceutical ingredient manufacturer. Viking's property consists of 32 acres that has a railroad track (hereinafter, "the Argo track" or "track") running through it. The track was built before Viking acquired the property. In 1909, the prior owner entered into an agreement (hereinafter, "the 1909 Agreement") with Ingredion's predecessor, "Corn Products," granting Corn Products an easement on the property "for the construction, maintenance, and operation of the [track] on the [property.]" The parties recorded the easement and Viking attached a copy of the easement to the complaint. Viking's complaint alleged the easement

- 2 -

stated that Corn Products could not assign the easement to anyone other than the Chicago Peoria Western Railway Company (Peoria Railway) without the owner's consent. Peoria Railway could assign the easement back to Corn Products. The complaint alleged that the easement stated that if any unauthorized assignment occurred (*i.e.*, other than between Corn Products and Peoria Railway) without the owner's consent then the easement "shall cease." According to the complaint if that were to occur then the owner had "the right, at its election, to require the removal of the [track] from the Easement."

¶ 7       The complaint alleged Corn Products did assign the easement to Peoria Railway in 1909 and at no time did Peoria Railway ever assign the easement back to Corn Products or to Ingredion. Neither the previous owner nor any successor, including Viking, ever consented to a further assignment of the easement or to an assignment of the easement to Belt. The complaint alleged that in 1912 "an attempt was made" to assign the easement to Chicago and Western Indiana Railroad Company (Indiana Railroad). The complaint alleged the then owner of the property did not consent to that assignment. Therefore, Viking alleged, the assignment "was invalid, null and void" and "under the express terms of the 1909 Agreement, the Easement terminated." The property has been the subject of subsequent agreements in multiple years, but, the complaint alleged, none of those agreements modified the property owner's rights under the 1909 Agreement including "the right of consent established in that 1909 Agreement that was required to validly assign or transfer the Easement to a third party."

¶ 8       Today, the track is used to connect Ingredion's manufacturing facility, which sits to the northwest of Viking's property, with Belt's railway yard, which sits to the southeast of Viking's property. The railway yard is "a switching and terminal point that serves a number of different railroads, and in which a great number of railroad track lines come together and are

interconnected." Defendants move railway cars from Belt's yard to Ingredion's manufacturing facility on the track on Viking's property. Defendants also park railway cars on the track "for hours at a time." Viking leases the portion of its property north of the railroad track to a manufacturing and storage operation. The complaint alleges that neither Viking nor its lessee can "develop or make reasonable use of" Viking's property south of the track (hereinafter, the "undeveloped parcel") "because of Defendants' wrongful actions." Later, the complaint alleges the railway track prevents Viking or its lessee from enjoying the undeveloped parcel because the track makes it inaccessible. The track "is below grade for much of its length," there "is no reasonable or practical way to cross over" the track, and the only reasonable access to the undeveloped parcel is from land Viking does not own.

¶ 9     Viking's complaint specifically alleges as follows:

> "There is no valid, existing agreement or deed that grants Belt Railway or Ingredion an easement or right to use the Viking Property, to own or operate the [track] that is built upon that Property. There is no agreement in which third-party beneficiary rights are granted to Ingredion, Corn Products or any other of its predecessors in interest, and, there is no contract or agreement between Viking Partners and Defendants that grants them a right to use the Viking Property to own or operate the [track] that is built upon that Property."

Viking alleges that by the time it acquired all of the property the easement had been terminated because "a prohibited assignment *** had been attempted and no consent had ever been given, and none recorded," any subsequent purported assignment to Belt was invalid and of no effect because at the time Belt claims that it was assigned the easement the easement had terminated,

and there was no further assignment of the easement that was recorded or of which Viking had actual or constructive notice.

¶ 10    Viking's complaint alleges it took the property without actual or constructive notice of a purported easement in a 1914 agreement with Belt therefore that agreement "does not create any rights that Belt Railway can assert against Viking Partners." Viking's complaint alleges that in 2006 it attempted to negotiate an easement with Belt that would provide Viking compensation for Belt's use of the property but Belt refused to enter into any such easement agreement; thus, in 2009 Viking sent Belt a letter stating that permissive use of the property upon which the Argo track was built would be withdrawn as of November 1, 2009 and, accordingly, as of that date Belt's "use of the property upon which the [Argo track] is built was unauthorized and without the permission of Viking Partners, and a violation of Viking Partners' rights in the Property." The complaint alleges Belt does not have a prescriptive easement because it has not used the property without permission or a claim of title that is inconsistent with that of Viking Partners or its predecessor in title for the required statutory period of 20 years.

¶ 11    Viking's complaint sought a declaratory judgment against Belt and Ingredion "declaring that Defendants Belt Railway and Ingredion do not have any legal right or interest, including an easement, to use the Viking Property upon which the [Argo track] is built" (Count I); a judgment awarding Viking damages for intentional trespass and enjoining Belt and Ingredion from continued trespass on the property (Count II); and an injunction ordering Belt and Ingredion to "surrender possession of the Viking Property upon which the [track] is built" and awarding Viking damages for rent and profits (Count III).

¶ 12    In 2017 Belt filed a motion for summary judgment on plaintiff's complaint on the sole ground that "all of the claims of and remedies requested by [Viking] are preempted" by the

Interstate Commerce Commission Termination Act (Termination Act or Act). Belt's motion argued that under the Termination Act the Surface Transportation Board (Board) "maintains 'exclusive' jurisdiction over 'transportation by rail carriers[,]' and the remedies the Board could order 'with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.' [Citation.]"

"The jurisdiction of the Board over—

2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C.A. § 10501.

¶ 13    Belt's motion asserted that, generally speaking, Belt "conducts railroad operations on railroad tracks using railroad equipment." Specifically, as it pertains to this appeal, Belt receives rail cars from another railroad containing corn from Wisconsin, Belt uses the track at issue to deliver those rail cars to Ingredion, and Belt then uses the track to remove the empty rail cars from Ingredion. This occurs on an almost daily basis, and in 2016 Belt delivered to Ingredion an estimated 19 rail cars per day via services five to six times per week and received "approximately $100,000 per month from the Belt's [*sic*] railroad transportation and operations conducted upon the [track.]" Belt's motion asserted it has used the track to service Ingredion and its predecessors consistently for approximately 100 years.

¶ 14    Belt argued that the Board has exclusive jurisdiction over the abandonment or discontinuance of switching or side tracks even if they are located entirely in one state and that this federal preemption extends to claims for ejectment, trespass/money damages, and declaratory judgments, all of which "have been held to be preempted when asserted against a rail carrier in regard to an active rail line, like [the Argo track.]"  According to Belt's motion there are two types of preemption in this arena: categorical and as-applied.

¶ 15    Belt's motion argued all of Viking's claims and requested remedies are categorically preempted because the track in question "is an active rail line which [Belt] uses to service Ingredion and [Wisconsin & Southern Railroad] [(from whom Belt receives Ingredion's rail cars containing corn)]" and Viking's claims and remedies, whether termed ejecting, enjoining the use, or surrendering possession, "would result in a forced 'abandonment, or discontinuance of' an active railroad operation," which is categorically preempted by the Termination Act.  Belt also argued Viking's claims for money damages and declaratory judgment are remedies that are expressly preempted by the Termination Act because the remedies provided under the Termination Act "are 'exclusive and [categorically] preempt' all other remedies."

¶ 16    Belt's motion also argued Viking's claims and remedies are preempted "as-applied."  According to the motion, claims and remedies are preempted as-applied if they would "have the effect of foreclosing or unduly restricting a railroad's ability to conduct any part of its operations or otherwise unreasonably burdening interstate commerce" or if the state action would "have the effect of unreasonably burdening or interfering with rail transportation."  Belt argued that Viking had the burden to show that ejecting it from the property would not unreasonably interfere with its rail operation.  Here, Belt argued that Viking's requested relief "would have 'the effect of foreclosing' Belt's ability to conduct a part of its railroad transportation and operations—the part

that it conducts on the [Argo track.]" Belt also argued that private civil claims for trespass and money damages directly related to a carrier's ongoing use of a rail line and declaratory judgments are "routinely" preempted (as-applied) and that a declaratory judgment regarding rights to the land under the track "constitutes 'state *** activity' that the Board has held as preempted."

¶ 17 Ingredion also filed a separate motion for summary judgment on the ground the Board has exclusive jurisdiction over the "abandonment of rail lines" under the Termination Act and Viking's claims are both categorically preempted, and preempted as-applied "which involves a fact-specific determination." Ingredion's motion asserted that rail service is critical to its operations. It stated that numerous tracks thread throughout its facility to enable it to receive raw materials and to ship finished product. Ingredion owns the tracks within its facility and those tracks "connect to Belt and two other common carrier railroads." Ingredion's motion asserted that bills of lading show that the corn shipments it receives from Belt "are transported as part of an interstate through movement." Ingredion further asserted that there are "no other possible routes on which Belt can deliver goods to Ingredion on a regular basis besides the [Argo track.]"

¶ 18 Ingredion argued that Viking's claims and requested relief would severely constrict its right to have common carrier service. According to Ingredion "transportation by rail carriers," over which the Bord has exclusive jurisdiction, as defined in the Termination Act includes property related to the movement of freight by rail regardless of ownership or an agreement concerning use as well as "the interchange of freight." Ingredion's motion for summary judgment also argued that the relief sought in Viking's complaint would impermissibly intrude into the Board's exclusive jurisdiction over railroad operations and abandonments because "cessation of operations on a rail line, abandonment, and discontinuance of service on a rail line

fall squarely within the parameters of regulation of rail transportation for which the [Termination Act] preempts state remedies and grants exclusive jurisdiction to the [Board.]" Additionally, Ingredion argued that Viking's request for a declaratory judgment that Belt has no legal right to use the property and to turn over the track to Viking "would implicate the [Board's] exclusive jurisdiction over licensing of rail operations" and serve as an "impermissible preclearance requirement for Belt to continue operating on the [track.]" Ingredion argued Viking's complaint is categorically preempted because its requested relief "falls squarely within matters directly regulated by and within the exclusive jurisdiction of the [Board] or amount to an impermissible preclearance requirement."

¶ 19    Ingredion also argued that Viking's claims are preempted as applied because they would effectively terminate Belt's rail service to Ingredion on the track. Specifically, Ingredion asserted, in part, that the track "is necessary for Belt's present and future railyard operations and service to Ingredion" and termination of that service would cause "a direct negative impact on Belt, including in an economic sense." Or, "[p]ut simply, [Viking] seeks to do precisely what the [Termination Act] forbids; that is, to use state law to restrict Belt's ability to conduct its rail transportation services to Ingredion." Ingredion similarly argued Viking's claim for monetary damages is preempted under the Termination Act because the remedies under the Transportation Act are exclusive and preempt all other remedies. Finally, Ingredion's motion for summary judgment argued that Viking's claims are preempted by conflict preemption because Belt is unable to comply with its federal law obligation to provide rail service to Ingredion and Viking's requested relief.

¶ 20    On March 19, 2019, the trial court entered a well-reasoned order granting defendants' motion for summary judgment. The court ruled Viking's complaint is preempted by section

10501 of the Termination Act (49 U.S.C. § 10501) and, therefore, the trial court lacked subject matter jurisdiction over the complaint and exclusive jurisdiction over Viking's claims lies with the Board. First, the trial court found the track is not a "private track" under the Termination Act but is "excepted track" as defined in the Termination Act and is under the Board's jurisdiction. The court then held that Viking's claims are categorically preempted "for they interfere directly with Belt's daily railroad operations, services, and activities of rail transportation." The court concluded that the remedies sought would cause "a forced abandonment and discontinuance" of the track that would "amount to regulation of rail transportation and impermissibly usurp the exclusive, broad, and clear jurisdiction" of the Board. Next, the trial court found that Viking failed to satisfy its burden to show that ejecting Belt from the property would not unreasonably interfere with Belt's rail operations therefore its complaint is preempted by the Termination Act as applied in this case.

¶ 21    This appeal followed.

¶ 22                              ANALYSIS

¶ 23    This case comes to us on the trial court's order granting summary judgment in favor of Belt and Ingredion on the ground Viking's complaint in the circuit court of Cook County is preempted by the federal Termination Act (49 U.S.C. § 101 *et seq*.).

>    "Summary judgment should be granted only where the pleadings,
>    depositions, admissions, and affidavits on file, when viewed in the light most
>    favorable to the nonmoving party, show that there is no genuine issue as to any
>    material fact and that the moving party is clearly entitled to judgment as a matter
>    of law. [Citations.] Where a case is decided through summary judgment, our
>    review is *de novo*, and we may affirm the trial court's decision for any reason in

the record." *Openlands v. Department of Transportation*, 2018 IL App (1st) 170340, ¶ 16.

Moreover, "[w]hether state law is preempted by a federal statute is a question of law, subject to *de novo* review." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 15 (2006).

"The supremacy clause of the United States Constitution provides that '[t]his Constitution, and the Laws of the United States *** shall be the supreme Law of the Land *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' U.S. Const., art. VI, cl. 2. 'State law is preempted under the supremacy clause in three circumstances: (1) when the express language of a federal statute indicates an intent to preempt state law; (2) when the scope of a federal regulation is so pervasive that it implies an intent to occupy a field exclusively; and (3) when state law actually conflicts with federal law.' [Citations.] The determination of whether state law is preempted turns on the intent of Congress. [Citations.]" *Poindexter v. State, ex rel. Department of Human Services*, 229 Ill. 2d 194, 210 (2008).

As previously stated the federal statute at issue in this case provides exclusive jurisdiction to the Board over the use of certain railroad tracks and, provides in pertinent part, as follows:

"The jurisdiction of the Board over--

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C.A. § 10501.

When Congress enacted the Termination Act it created the Board to administer it. *Union Pacific Railroad Co. v. Chicago Transit Authority*, 647 F.3d 675, 678 (7th Cir. 2011), citing 49 U.S.C. §§ 10101, 10102(1). The United States Court of Appeals for the Seventh Circuit has found that with the Termination Act "Congress expressly conferred on the Board 'exclusive' jurisdiction over the regulation of railroad transportation." *Id.* "Congress defined 'transportation' broadly to include railroad property, facilities, and equipment 'related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use.' [Citation.]" *Wedemeyer v. CSX Transportation, Inc.*, 850 F.3d at 894 (7th Cir. 2017). The Termination Act does not define "regulation" (*Wedemeyer*, 850 F. 3d at 894), but the court has found that "Congress's intent *** to preempt state and local regulation of railroad transportation has been recognized as broad and sweeping" (*Chicago Transit Authority*, 647 F.3d at 678).

¶ 24    Courts have treated the "broad and sweeping" preemption of state "regulation" of railroad transportation "in a variety of ways." *Chicago Transit Authority*, 647 F.3d at 679. And,

"[i]n 2005, the Board surveyed the different approaches in case law and suggested that there were two manners in which state or local actions or regulations could be preempted: (1) categorical, or *per se*, preemption, and (2) 'as applied' preemption. [Citations.] Categorical preemption occurs when a state or local action is

preempted on its face despite its context or rationale. [Citation.] If an action is not categorically preempted, it may be preempted 'as applied' based on the degree of interference that the particular action has on railroad transportation—this occurs when the facts show that the action 'would have the effect of preventing or unreasonably interfering with railroad transportation.' [Citation.]" *Id.* at 679.

The Board described the relevant types of categorically preempted actions as follows: "a 'state or local regulation of matters directly regulated by the Board.' [Citation.]" *Id.* at 679 n3, citing *CSX Transportation, Inc.—Petition for Declaratory Order*, FIN 34662, 2005 WL 1024490, 2005 WL 1024490, at *2. "[O]nly laws that have the effect of managing or governing rail transportation will be expressly preempted." *Franks Investment Co. LLC v. Union Pacific Railroad Co.*, 593 F.3d 404, 410 (5th Cir. 2010). Further, "[t]o the extent remedies are provided under laws that have the effect of regulating rail transportation, they are preempted." (Emphasis omitted.) *Id.* at 410. "The relevant question *** is whether [the] dispute invokes laws that have the effect of managing or governing, and not merely incidentally affecting, rail transportation." *Id.* at 411. Under an "as applied" analysis the question is whether the state action prevents or unreasonably interferes with railroad transportation. *Chicago Transit Authority*, 647 F.3d at 680.

¶ 25    The "state or local action" which is preempted under the Termination Act can be a state-law tort claim including a trespass claim, an award of damages, or other state-law remedies. See *Wedemeyer*, 850 F.3d at 897 (and cases cited therein).

> "More specifically, '[w]here a tort claim would interfere with "rail transportation" or "operation" of railroad tracks or facilities, the regulation or claim is expressly preempted.' [Citation.] On the other hand, 'where a tort claim is premised upon a railroad's activities on its property that have only a remote or

incidental connection to "rail transportation" or "operation" of railroad tracks or facilities, but rather are "tortious acts committed by a landowner who happens to be a railroad company," the claim is not expressly preempted by the [Termination Act.]' [Citations.]" *Smith v. CSX Transportation, Inc.*, 247 F. Supp. 3d 952, 956-57 (N.D. Ill. 2017).

¶ 26    On appeal, Viking first argues the trial court erred in finding all of its claims categorically preempted (1) without first deciding the state law property and contractual issues and (2) because all of its claims do not "regulate" rail transportation. Viking argues that before a determination can be made that Belt, Ingredion, and/or the track are under the Board's exclusive jurisdiction it must be determined that Belt has any right at all to operate on the track on Viking's property. That question, Viking argues, is a question of state law for the trial court to resolve before reaching the preemption question. Viking argues that the Board "routinely recognized that railroads 'still need the requisite property rights before engaging in any rail-related activity' on property they do not own. [Citation.]" Viking argues the trial court must determine whether the easement terminated, Belt has an easement across its land, and whether Viking effectively terminated Belt's permissive use of the land before it can determine whether Viking's claims are categorically preempted and before the Board can determine any remedies.

¶ 27    In support of its argument Viking cites *Allied Erecting and Dismantling Co., Inc. v. Surface Transportation Board*, 835 F.3d 548 (6th Cir. 2016). In that case, the court held that the state court must decide a disputed issue over ownership of certain tracks before returning to the Board to decide the parties' dispute over whether the plaintiff had a right to evict the railroad company. In *Allied Erecting & Dismantling Co., Inc.*, the disputed ownership issue went to the question of whether the track at issue in that case was "private" track, which are not within the

board's jurisdiction, or "mainline" or "excepted" track. The *Allied* court pointed out the Act "contemplates at least three types of railroad track. The first type, 'railroad lines' or 'main line tracks,' comprises tracks 'designed and used for continuous transportation service by through, full trains between different points of shipment or travel[.]' *Nicholson v. ICC*, 711 F.2d 364, 367 (D.C. Cir. 1983) (emphasis omitted.)" *Allied Erecting & Dismantling Co.*, 835 F.3d at 550.

> "The second type is 'excepted tracks,' defined as 'spur, industrial, team, switching, or side tracks, or facilities[.]' 49 U.S.C. §§ 10501(b), 10906. Excepted tracks are used for loading cars, track switching, and other activities that are ancillary to main-line service. *Nicholson*, 711 F.2d at 367-68.

> * * *

> The third type, 'private tracks,' includes tracks that are not used for 'transportation by rail carrier'—*i.e.* not used by a person who provides common-carrier service for compensation—and are therefore outside the Board's jurisdiction. See 49 U.S.C. § 10501(a)." *Allied Erecting & Dismantling Co., Inc.*, 835 F.3d at 550-51.

¶ 28    In *Allied* the plaintiff argued that the tracks became private tracks when the railroad sold the lot to a real estate company; thus, the Board lacked jurisdiction over the tracks. Thus, in *Allied Erecting and Dismantling Co.* the question required to be resolved in state court was whether the track is private and therefore outside the jurisdiction of the Board. This question went to the issue of the jurisdiction of the Board under the Termination Act. In contrast, in this case, none of the questions which Viking argues should be resolved in state court go to the existence of the Board's jurisdiction because the track in this case is not private track. Viking

does not meaningfully dispute that the track in this case is not private track under the Termination Act.

¶ 29　Instead, we find *Allied Erecting and Dismantling Co.* supports finding the trial court lacks jurisdiction in this case.　There, the court rejected the plaintiff's argument, finding that it, like Viking in this case, "conceded that the track is not private, and therefore is within the Board's jurisdiction."　*Id.* at 552-53.

¶ 30　Further, Viking's argument the trial court must first decide "the state law question" of whether Belt has any rights in the track before it can determine whether the Board has exclusive jurisdiction over the track and Belt's operations thereon is belied by the authority it cites. Viking's argument is that, at least as to Belt, the property has never been under the Board's jurisdiction because by the time Belt began operating on the track the easement had terminated. Paradoxically, the question Viking claims the state court must resolve in this case—whether the easement has in fact been terminated—is specifically preempted by the Termination Act because the Board has exclusive jurisdiction over the "construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State."

¶ 31　However, in *Pinelawn Cemetery—Petition for Declaratory Order*, FD 35468, 2015 WL 1813674, cited by Viking, one of the issues raised was, similarly, whether a "rail track *** has *ever* been[] a 'railroad line' over which the Board has exclusive jurisdiction" and therefore the plaintiff did not need to "seek Board permission to evict" the railroad companies from the property under state law.　(Emphasis added.)　*Pinelawn* ostensibly supports Viking's position the trial court must determine the state law issues first in that the Board wrote that "if a state court were to determine that the lease had terminated, Pinelawn could not force the Railroads off the

property unless it seeks and receives a ruling from the Board concluding that the property is not needed as part of the national rail system." (Emphasis added.) *Pinelawn Cemetery—Petition for Declaratory Order*, FD 35468, 2015 WL 1813674, at \*1.

¶ 32 Nonetheless, as in *Allied Erecting and Dismantling Co., Inc.*, the state law question in *Pinelawn* implicated the question of whether the Board lacked jurisdiction over the track at all. *Id.*, at \*5 ("Although this incidental trackage is necessary for line-haul services, it is known as 'excepted track' because, under 49 U.S.C. § 10906, the 'construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks' (and related facilities) is statutorily excepted from the entry and exit licensing requirements of 49 U.S.C. §§ 10901-10905, as well as the sales and acquisition licensing requirements of 49 U.S.C. §§ 11321 *et seq.*"), see also *Jie Ao & Xin Zhou—Petition for Declaratory Order*, FD 35539, 2012 WL 2047726, at \*5 (S.T.B. June 4, 2012) ("after railroad property has been lawfully abandoned, state condemnation or property laws can be applied, since the agency's regulatory mission has come to an end"). In *Pinelawn*, the plaintiff argued the termination of the lease indicated the railroads' abandonment of an excepted track. See *id.* at \*6. The Board stated the issue presented this way: "If the Underlying Lease of a Rail Facility Has Terminated, Has an Abandonment Occurred? Does the expiration of a lease under which a carrier (here, LIRR through NY&A) operates excepted track remove the property from the Board's jurisdiction and place it solely within the authority of the state courts?" *Pinelawn Cemetery*, FD 35468, 2015 WL 1813674, at \*7.

¶ 33 The *Pinelawn* court rejected the proposition that the question of abandonment of the track—the purported state law question the state court allegedly had to answer first—removed the complaint from the Board's jurisdiction. See *id.* at \*9 ("even if the state court were to find that the 1904 Lease was not renewed, Pinelawn could not use that ruling to evict the Railroads

from the property.  Rather, Pinelawn would need to ask the Board to remove its jurisdiction through a declaratory order.").  The Board reasoned as follows:

> "This case is a bit different from many preemption cases because, instead of looking at the authority of a public body to regulate a rail carrier under state and local law, this case involves the rights of a private party to remove a rail carrier under contract law.  But the principle is the same.  Finding that a landowner, under state law, could remove a rail carrier conducting vital operations at an ancillary facility needed for rail transportation could—and here, based on the record developed in this proceeding, would—give the landowner the right to completely cut off shippers and prevent the common carrier from carrying out its obligation to serve them.  Just as state regulatory laws must yield to federal law under § 10501(b), the expiration of a contract between a railroad and a landowner does not, by itself, amount to an abandonment.  Rather, even for § 10906 track, something more would be required on the part of the railroad in order for an abandonment to occur.
>
> The key consideration here is whether or not the carrier has continued to exhibit a fixed and continuing intent to hold out to provide common carrier rail service to the public.  The railroads' failure to timely execute an extension of the 1904 lease would be a factor to be considered in that determination, but it is only one factor.  Even if a court were to find that the 99-year lease was not properly renewed, this would not be a case in which the railroad, by contract, intentionally abandoned its interest in the property.  It is clear by the Railroads' conduct throughout this case and the related proceedings that they believe that they need

this property to continue their interstate rail operations." *Pinelawn Cemetery*, FD 35468, 2015 WL 1813674, at \*9.

¶ 34    Similarly, in this case, it is clear Belt's conduct had evinced their continuous belief in not just the need for but the actual use of the property to continue their rail operations. Viking does not argue that if the easement terminated, then the track on its property is private track or that an abandonment has occurred such that the Board would lack jurisdiction. Rather, there is no question of fact that even if the easement in this case did terminate just as Viking says, the track at issue in this case still is excepted track under the Termination Act. Therefore, *Pinelawn*, too, is inapposite to Viking's position. We find *Pinelawn* supports holding that Viking's claims are under the exclusive jurisdiction of the Board. *Pinelawn Cemetery*, FD 35468, 2015 WL 1813674, at \*9. The evidence does not demonstrate that the property is no longer needed for the interstate rail system in this case.

¶ 35    Next, Viking argues its claims and requested remedies do not "regulate" matters "regulated by the Board" but rather "only incidentally impact rail transportation;" therefore, categorical preemption does not apply. Viking admits, however, that it "seeks to establish that the 1909 Easement terminated according to its terms and that Viking Partners withdrew any permission that it previously granted for Belt Railway to operate across the Viking Property" while conversely "Belt Railway seeks to establish that it possesses the requisite contract and/or property rights to continue operating the Argo Track." Viking agues resolution of this dispute "does not amount to regulation of rail transportation." We disagree.

> "Section 10501(b) preemption does, however, prevent states or localities from intruding into matters that are directly regulated by the Board (*e.g.*, railroad rates, services, construction, abandonment, etc.). It also prevents states or

localities from imposing requirements that, by their nature, could be used to deny a railroad's ability to conduct rail operations or proceed with activities that the Board has authorized, such as a construction or abandonment." *Jie Ao & Xin Zhou—Petition for Declaratory Order*, FD 35539, 2012 WL 2047726, at *5. "The agency's broad and exclusive jurisdiction over railroad operations and activities prevents application of state laws that would otherwise be available." *Id.*

¶ 36　　In *Wedemeyer*, the Seventh Circuit held that "[b]ecause the [plaintiffs] seek to control (terminate) use of the track in question through their lawsuit, their claims are preempted." *Wedemeyer*, 850 F.3d at 897. Here as well, Viking seeks to terminate Belt's use of the track in question. We believe this action falls within the Board's exclusive jurisdiction to regulate "operation [or] abandonment, or discontinuance" of the track at issue. "A railroad abandons lines when it intends 'to cease permanently or indefinitely all transportation service on the relevant lines.' [Citation.]" *Simmons v. I.C.C.*, 808 F.2d 22, 24 (7th Cir. 1986). Viking's lawsuit would have the effect of ceasing permanently Belt's transportation service on the relevant line. Viking's cause of action is, therefore, categorically preempted by the Termination Act. See *Cedarapids, Inc. v. Chicago, Central & Pacific Railroad Co.*, 265 F. Supp. 2d 1005, 1013 (N.D. Iowa 2003). In *Cedarapids, Inc.*, the court held as follows:

> "The Court also finds that the [Act] preempts state regulation of the abandonment of lines of railroad. The [Act's] grant of exclusive jurisdiction to the [Board] over the abandonment of tracks and its expansion of the types of tracks within this exclusive jurisdiction to include wholly intrastate spur and industrial tracks indicates that Congress intended for the abandonment of all types of tracks to be under the [Board's] jurisdiction. This comports with Congress'

stated desire of deregulation of the railroad industry by ensuring that states do not impose regulations which conflict with or undermine those set forth in the [Act] and imposed by the [Board] with respect to the abandonment of tracks." *Cedarapids, Inc.*, 265 F. Supp. 2d at 1013.

¶ 37    Regardless, even if categorical preemption does not apply, preemption "as applied" clearly applies in this case. Initially, we reject Viking's argument the trial court "erred by ignoring the presumption against preemption." Writing on the topic of the presumption, the federal court has found that:

"First, there is a presumption, especially in fields where states have traditionally reigned, that 'the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' This approach comports with notions of federalism and the historic place held by the states in the regulation of health and safety. This principle gives way, however, where there has been a history of significant federal presence.

Second, the analysis of a statute's preemptive scope is guided by the principle that 'the purpose of Congress is the ultimate touchstone' in every preemption case. [Citation.]

Under the principles of preemption, the plain language used by Congress when it enacted the [Act] clearly provides that the [Board] has exclusive jurisdiction over 'the construction, acquisition or operation *** of *** switching, or side tracks, or facilities.' [Citation.] Further, the statute expressly provides that 'the remedies provided under this part with respect to regulation of railroad transportation are exclusive and preempt the remedies provided under Federal or

State law.' [Citation.] As such, the Court finds that the clear and manifest purpose of Congress when it enacted the [Act] was to place certain areas of railroad regulation within the exclusive jurisdiction of the [Board] and to preempt remedies otherwise provided under federal or state law." *Rushing v. Kansas City Southern Railway. Co.*, 194 F. Supp. 2d 493, 498 (S.D. Miss. 2001).

Viking's argument the presumption against preemption prevents summary judgment in favor of defendants in this case fails.

¶ 38 Next, Viking argues that to find as-applied preemption we must find that the claims and requested remedies have an "economic impact on the rail industry as a whole" and that defendants failed to establish that Viking's complaint would unreasonably interfere with rail transportation as defined by the Termination Act. We disagree. "For state or local actions that are not preempted on their face, § 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with rail transportation." *Jie Ao & Xin Zhou*, FD 35539, 2012 WL 2047726, at \*6, citing *Franks Investment Co.*, 593 F.3d at 414. "The Board has interpreted state or local regulation to include state property law claims brought by non-governmental entities, where such claims would have the effect of interfering with railroad operations. *Mid-America Locomotive and Car Repair, Inc.—Petition for Declaratory Order*, FD 34599 (STB served June 6, 2005)." *Id.* at \*4.

"The second category of preempted state actions and regulations are those that are preempted as applied. Section 10501(b) of the [Termination Act] may preempt state regulations, actions, or remedies as applied, based on the degree of interference the particular state action has on railroad operations. \*\*\* Citing our decision in *Friberg*, 267 F.3d at 439, the [Board] stated that 'it is well settled that

states cannot take an action that would have the effect of foreclosing or unduly restricting a railroad's ability to conduct *any part of its operations*." (Emphasis added.) *New Orleans & Gulf Coast Railway Co. v. Barrios*, 533 F.3d 321, 332 (5th Cir. 2008).

¶ 39 Courts have considered the impact of state regulation on a single location in the national rail system. See, *e.g.*, *Chicago Transit Authority*, 647 F.3d at 682 (considering effect on "Union Pacific's current railroad operations, including requiring Union Pacific to use nonstandard procedures to maintain [one] Right of Way"). Additionally, the Seventh Circuit held that a condemnation action was "preempted by federal law because it is a regulation *** that has the effect of preventing and unreasonably interfering with railroad transportation." *Id.* The question was whether the state action would prevent or *unreasonably interfere* with railroad transportation. *Id.* at 680. If the state action would prevent the railroad from using the property for railroad transportation or *unreasonably interfere* with existing transportation there would be "no question [the state action] would be preempted by federal law." *Id.* at 681. The degree of interference is of little consequence. See *Jie AO and Xin Zhou*, 2012 WL 2047726, at *7 ("assuming, arguendo, *** application of state adverse possession law here *might have little actual, practical effect* on current plans for active railroad operations, circumstances can change. [The Board will not allow] landowners to carve off strips of railroad ROW all over the country for non-rail use ***. That untenable result would undermine interstate commerce and the strong federal policy in favor of retaining rail property in the national rail network, where possible.") (Emphasis added.). Nonetheless, in this case, regardless how Viking attempts to frame its requested relief, the impact of any of Viking's requested relief in the complaint on Belt's operations, including a declaration of the parties' rights, would be significant, in that the relief

sought would necessarily result in the cessation of rail activities on the subject property and Belt's provision of carrier services to Ingredion.

¶ 40    Such claims are preempted "as applied" by the Termination Act. "[T]he remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law. 49 U.S.C. § 10501(b)." *Franks Investment Co. LLC*, 593 F.3d at 407, see also, *e.g.*, *Rushing v. Kansas City Southern Railway Co.*, 194 F. Supp. 2d 493, 500 (S.D. Miss. 2001) ("The Court finds that to the extent the Plaintiffs seek to use state common law to regulate the manner in which the Defendant conducts operations at its switch yard, which in turn would result in an economic impact on the Defendant, the state law has been preempted by the [Act] which vests exclusive jurisdiction in the [Board] over such matters."). Although courts differentiate between claims that do not directly relate to the manner in which the railroad conducts its activities and claims that seek "to enjoin the [railroad] from operating its switch yard in the manner it currently employs" (*Tres Lotes LLC v. BNSF Railway Co.*, 61 F. Supp. 3d 1213, 1218 (D.N.M. 2014)), this case clearly presents the latter; therefore, preemption applies. *Id.* at 1217 (The Termination Act "completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm.").

¶ 41    Finally, we reject Viking's arguments the trial court should have permitted additional discovery or considered alternative, equitable remedies. First, as to discovery, we do not find that the development of any additional facts regarding the claims stated in the complaint would have impacted the determination that the claims in the complaint are preempted both categorically and as applied by the Termination Act. See *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 905 (10th Cir. 2016) ("facts, even if established, would not have affected

- 24 -

the district court's central legal conclusion"), *Wilderness Society v. Kane County, Utah*, 560 F. Supp. 2d 1147, 1158 (D. Utah 2008) ("information is not relevant because the court does not need to make *** determination to decide the preemption issue").  Second, we note (as did the trial court) that Viking is not without an appropriate venue in which to seek a remedy including access to the undeveloped parcel.  Under the broad and sweeping preemptive effect of the Termination Act, we hold that venue lies before the Board.

¶ 42      Viking's claims are preempted by the Termination Act; therefore, the trial court lacked jurisdiction over Viking's claims.  See *Rizzo v. Travelers Insurance Co.*, 193 Ill. App. 3d 67, 73 (1989) (finding trial court lacked subject matter jurisdiction, mandating dismissal, where ERISA preempted state claims).  The trial court properly granted defendants' motion for summary judgment based on preemption by the Termination Act.

¶ 43                                     CONCLUSION

¶ 44      For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 45      Affirmed.